UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                    :
HYUNJUNG KI,                                                        :   20-CV-4343 (ARR) (JRC)
                                                                    :
             *Plaintiff*,                                        :
                                                                    :   **OPINION & ORDER**
   -against-                                                      :
                                                                    :
CITY OF NEW YOK, DERMOT SHEA, as NYPD                               :
Commissioner, HYUN KIM, in his individual and official              :
capacity as an NYPD Officer, and JUNG KIM, individually             :
and in his official capacity as an NYPD Officer,                    X

             *Defendants*.

-------------------------------------------------------------------

ROSS, United States District Judge:

       On September 16, 2020, plaintiff, Hyunjung Ki, brought this action against defendants, the City of New York ("the City"), New York Police Department ("NYPD") Commissioner Dermot Shea, NYPD Officer Hyun Kim, and NYPD Sergeant Jung Kim, alleging violations of 42 U.S.C. § 1983 and multiple state law torts. In April 2021, Sergeant Kim filed an answer denying plaintiff's allegations and asserting cross claims against the City. The City and Commissioner Shea ("City defendants") now move to dismiss both plaintiff's complaint and Sergeant Kim's cross claim for indemnification. For the reasons that follow, I grant City defendants' motion in part and deny it in part. I also partially grant and partially deny plaintiff's related request to file an amended complaint.

1

## BACKGROUND[1]

On October 8, 2019, plaintiff began her first day of work at Apple Tree Café, a karaoke bar in Flushing, Queens. Compl. ¶¶ 11–12, ECF No. 1. At approximately 10 pm, Sergeant Kim and Officer Kim arrived at the bar in plain clothes. *Id*. Sergeant Kim and Officer Kim sat in a small, private room and ordered food and a bottle of scotch. *Id.* ¶ 13. Plaintiff was assigned as one of their two servers. *Id.* ¶ 12.

"After some period of drinking," while plaintiff and the other server were in the private room with them, Sergeant Kim and Officer Kim "allowed their service pistols to be exposed," causing plaintiff and the other server distress. *Id.* ¶ 13. Officer Kim then "grabbed [plaintiff's] hand and arm, pulled them around his waist, and forced her to feel his gun that was in its holster." *Id.* ¶ 14. Plaintiff's coworker asked if the two men were gang members, and they responded, "No, we are police officers." *Id*. According to plaintiff, their identification led her to believe "that they were acting in their official capacity" and "had full legal authority to do what they were doing." *Id*.

Officer Kim asked plaintiff to call in another coworker, whom he identified as "Jingo." *Id.* ¶ 15. Plaintiff said that she did not who that was but that she would leave to go find him. *Id*. Officer Kim responded by "forcibly push[ing] her down," blocking her movement, and "retriev[ing] his gun" from its holster. *Id*. As plaintiff sat in the private room with Officer Kim and Sergeant Kim, "male servers and bussers came and went." *Id.* ¶ 16. One attempted to guide plaintiff out, but Officer Kim "prevented plaintiff from leaving her seat." *Id*.

After some time, Officer Kim began banging his gun on the table and swearing at plaintiff.

---

[1] For the purposes of deciding this motion, I accept as true the following facts, which are drawn from plaintiff's complaint. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).

2

*Id.* ¶¶ 17–18. He said, "Do you know who I am? Do you know me? Sit still," and repeatedly uttered "you fuckin bitch." *Id.* ¶ 18. As Officer Kim "banged his gun on the table, he pointed the gun down, and some of the bullets fell to the floor." *Id.* ¶ 19. Plaintiff picked up two bullets and asked, "Don't you get in trouble if you lose something like this?" *Id*. Officer Kim responded, "No." *Id*.

At this point, Sergeant Kim left the private room to go to the bathroom; plaintiff's coworker who had been in the room with her had left some time earlier. *Id.* ¶¶ 20, 22. Alone with plaintiff, Officer Kim stated, "You know me, you fuckin bitch." *Id.* ¶ 20. Plaintiff, worried that Officer Kim would shoot her, pleaded with him to put the gun down. *Id.* ¶ 21. Several minutes later, Sergeant Kim returned to the room, and plaintiff asked him if he could convince Officer Kim to put his gun away. *Id*. Sergeant Kim told Officer Kim, "As my subordinate officer I am ordering you to put the gun away." *Id*. Officer Kim did not obey this order. *Id*.

Plaintiff's coworker then returned to the private room. *Id.* ¶ 22. When she opened the door, she observed Officer Kim pointing his gun at the side of plaintiff's head. *Id*. Officer Kim trained the gun on plaintiff's coworker and ordered her to "come sit here with the gun." *Id*. The coworker refused to enter and instead told her manager to call the police. *Id*. The owner and the manager of the restaurant then went into the private room, where plaintiff believes they informed Officer Kim and Sergeant Kim that they had contacted the police. *Id.* ¶ 23. Sergeant Kim and Officer Kim left the restaurant soon after. *Id*.

Plaintiff claims that she suffered severe emotional distress following this incident and has filed the present suit to seek compensation for her damages. *Id.* ¶¶ 1, 24. Her complaint alleges three separate violations of § 1983; three claims against the City and Commissioner Shea for negligent hiring, training, and supervision; one claim for reckless or negligent infliction of emotional distress; and one claim of "menacing and/or harassment." *Id.* ¶¶ 26–54. In his answer

3

to plaintiff's complaint, Sergeant Kim asserts three cross claims against the City, seeking representation and indemnification for the allegations against him. Answer to Compl. ¶¶ 55–63, ECF No. 18. City defendants have moved to dismiss plaintiff's complaint and Sergeant Kim's cross claims, arguing: (1) plaintiff's § 1983 claims fail because Officer Kim and Sergeant Kim were not acting under color of law during the incident in question; (2) plaintiff has not alleged sufficient facts to support her negligent hiring, training, and supervision claims; (3) any claims against Commissioner Shea fail because he was not Commissioner until December 2019; and (4) Sergeant Kim's claim for indemnification is not ripe for adjudication. Defs.' Mem. in Supp. Mot. Dismiss ("Defs.' Mem."), ECF No. 35.[2] Plaintiff and Sergeant Kim oppose City defendants' motion, *see* Plain.'s Mem. in Opp. Mot. Dismiss ("Plain.'s Mem."), ECF No. 39; Def. Jung Kim's Resp. Mot. Dismiss ("Def. Kim's Resp."), ECF No. 38; plaintiff has additionally requested leave to amend her complaint "[t]o the extent [I] perceive[] any deficiency" in the original complaint. Plain.'s Mem. 16.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding a motion to dismiss, I accept all factual allegations as true and draw all reasonable inferences in plaintiff's favor. *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). I am not, however, "bound to accept as true a legal conclusion

---

[2] Though the City and Commissioner Shea assert that their motion is one to "dismiss the Complaint in its entirety," Defs.' Mem. 1, they do not address plaintiff's claims for infliction of emotional distress and "menacing and/or harassment." I will address only those arguments actually raised in City defendants' motion. *Cf. Liberty Ins. Corp. v. Brenman*, 14-CV-5892 (CBA), 2016 U.S. Dist. LEXIS 26360, at *4–5 n.3 (E.D.N.Y. Feb. 29, 2016) (treating defendants' motion to dismiss, which did not address one of the issues raised in the complaint, as a partial motion to dismiss).

couched as a factual allegation." *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## DISCUSSION

I. **Plaintiff Has Alleged Sufficient Facts to Establish That Officer Kim and Sergeant Kim Were Acting under Color of Law.**

City defendants first argue that plaintiff's § 1983 claims should be dismissed because Officer Kim and Sergeant Kim were not acting under color of law when the incident in question took place. Defs.' Mem. 3–5. Section 1983 creates a civil cause of action against any party "who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. Thus, "[t]here are two essential elements of a § 1983 claim: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Claudio v. Sawyer*, 675 F. Supp. 2d 403, 407 (S.D.N.Y. 2009) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). City defendants' arguments are directed only at the first of these two elements.

"[I]t is by now axiomatic that 'under color of law means under pretense of law' and that 'acts of officers in the ambit of their personal pursuits are plainly excluded.'" *Pitchell*, 13 F.3d at 547–48 (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)). However, "there is no bright line test for distinguishing 'personal pursuits' from activities taken under color of law," and an officer does not avoid liability under § 1983 simply by claiming that he was off-duty at the time of the incident in question. *Id.* at 548. Instead, courts must "look at the 'totality of the circumstances surrounding the officer's acts'" and determine "whether the officer 'albeit off-duty,

5

nonetheless invoke[d] the real or apparent power of the police department' or 'perform[ed] duties prescribed generally for police officers.'" *Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009), *aff'd*, 409 F. App'x 464 (2d Cir. 2011) (first quoting *Lizardo v. Denny's, Inc.*, 97-CV-1234 (FJS), 2000 U.S. Dist. LEXIS 9785, at *39 (N.D.N.Y. July 13, 2000); and then quoting *Pitchell*, 13 F.3d at 548). Factors to be considered include:

> whether defendants identified themselves as police officers at any time during the incident; if plaintiff was aware that the defendants were police officers; whether defendants detained or questioned the plaintiff in the line of duty or scope of employment as police officers; if defendants drew a firearm or arrested the plaintiff; [and] whether defendants were engaged in any investigation or any aspect of the traditional public safety functions of police work.

*Id.* (quoting *Wahhab v. City of New York*, 386 F. Supp. 2d 277, 288 (S.D.N.Y. 2005)).

Considering plaintiff's complaint in light of these factors, I find that Sergeant Kim and Officer Kim were acting under color of law. According to plaintiff, Officer Kim and Sergeant Kim both identified themselves as police officers when Officer Kim first grabbed her hand and forced her to feel his gun. *See* Compl. ¶ 14. Indeed, later in the evening, Sergeant Kim invoked his authority as Officer Kim's commanding officer in an effort to intervene in Officer Kim's conduct. *Id.* ¶ 21. So not only did Officer Kim and Sergeant Kim make their occupation as police officers clear to plaintiff, they also drew on their professional relationship and their positions within the established hierarchy of the police department. Moreover, Officer Kim put plaintiff's hand on and eventually drew his service pistol, pointing it at plaintiff and banging it on the table as he berated her. *Id.* ¶¶ 14, 18–19, 22. These facts strongly indicate that Officer Kim and Sergeant Kim drew on their authority as officers in preventing plaintiff from leaving the room: as the Second Circuit has stated, there is "no doubt that when an officer identifies himself as a police officer and uses his service pistol, he acts under color of law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). Thus, while Officer Kim and Sergeant Kim "may have begun the evening acting 'in the ambit of

6

[their] personal pursuits,'" their challenged actions occurred under color of law. *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 475 (E.D.N.Y. 2002) (quoting *Pitchell*, 13 F.3d at 548).

My conclusion is supported by an assessment of other cases from this circuit. In both *Pitchell v. Callan*, 13 F.3d 545, and *Bonsignore v. City of New York*, 683 F.2d 635 (2d Cir. 1982), the Second Circuit held that the defendant officers were not acting under color of law when they shot at individuals during personal disputes while in their own homes and without identifying themselves as police officers. *Pitchell*, 13 F.3d at 548; *Bonsignore*, 683 F.2d at 639; *see also Claudio v. Sawyer*, 675 F. Supp. 2d 403, 409 (S.D.N.Y. 2009) (finding that the defendant, an officer who shot someone while off duty, was not acting under color of law where the complaint did "not allege that [the defendant] identified himself as a police officer, either by flashing his badge or by announcing to [the victim] any time before, during or after the shooting that he was a police officer or acting in that capacity"). On the other hand, in *Jocks v. Tavernier*, 316 F.3d 128, the Second Circuit concluded that the defendant officer acted under color of law when, during an argument with the plaintiff that resulted in the plaintiff's detention at gunpoint, the officer "displayed his shield and identified himself as a police officer" either as or after he drew his weapon. *Id.* at 134. Because the officer "had indicated that he was a police officer" "by the time [he] restrained" the plaintiff, the court had "no doubt" he acted under color of law. *Id.* Similarly, in *Moroughan v. County of Suffolk*, 514 F. Supp. 3d 479 (E.D.N.Y. 2021), the court concluded that a reasonable jury could find that the defendant was acting under color of law where there was evidence that he "(1) identified himself as a Nassau police officer; (2) flashed his shield; and (3) arrested plaintiff." *Id.* at 514. And in *Devito v. Barant*, 03-CV-1927 (DLI), 2005 U.S. Dist. LEXIS 22444 (E.D.N.Y. Aug. 23, 2005), the court found that "[a]lthough [the defendant officer] was off-duty, in chasing plaintiff, flashing his badge, and identifying himself as a police officer in an

7

attempt to apprehend plaintiff, [he] could be viewed as having 'invoked the real or apparent power of the police department.'" *Id.* at *17 (citing *Davis*, 224 F. Supp. 2d at 475–76); *see also Davis*, 224 F. Supp. 2d at 476 (finding that a reasonable jury could conclude that the defendant officer, who was off duty and in plain clothes, invoked the power of the police department "by informing [the plaintiff] that he was a police officer and flashing what appeared to be a badge"); *Mosca v. City of New York*, No. 17-CV-4327 (SIL), 2018 U.S. Dist. LEXIS 69846, at *11–12 (E.D.N.Y. Apr. 24, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 84163 (SJF) (E.D.N.Y. May 18, 2018) (concluding that plaintiff plausibly alleged that the defendant acted under color of law where he "(1) identified himself as an officer of the law; (2) flashed his badge; and (3) detained Plaintiff when he stated that 'I'm with the NYPD, you're not going anywhere'"). Here, as in *Jocks*, *Moroughan*, and *Devito*, Officer Kim and Sergeant Kim did not merely use their firearms as part of a personal dispute with plaintiff, but affirmatively identified themselves as police officers as they restricted plaintiff's movement. I join those courts in finding that these actions indicate that defendants were operating under color of law.

Resisting this conclusion, City defendants emphasize that the third and fifth factors courts consider in this context—whether defendants detained or questioned plaintiff in the line of duty and whether they were engaged in the traditional public safety functions of police work, *see Claudio*, 675 F. Supp. 2d at 408—weigh against a determination that Sergeant Kim and Officer Kim were acting under color of law. Defs.' Mem. 5. Viewing these factors on their own, I agree: plaintiff does not allege that Officer Kim and Sergeant Kim were acting in the line of duty when they went to the restaurant, and their alleged conduct while there certainly did not serve a public safety function. City defendants also point out that Sergeant Kim and Officer Kim were dressed in plain clothes and "heavily consuming alcohol," "acts more akin to the conduct of a private citizen."

8

Defs.' Mem. 5. Again, I do not disagree that these actions are not typically associated with police work. But City defendants' arguments rely on the premise that, because aspects of Officer Kim and Sergeant Kim's conduct were inconsistent with police work, the two defendants ultimately were not acting under color of law. This misunderstands the color of law analysis. Rather than viewing details of the defendants' conduct in isolation, my task is to weigh all the factors together and "look at the 'totality of the circumstances.'" Considering those circumstances, I find that, by identifying themselves as police officers, referencing their roles in the police hierarchy, and drawing their service weapons, Sergeant Kim and Officer Kim invoked the authority of the police department in their interaction with plaintiff. *Cf. Davis*, 224 F. Supp. 2d at 475–76 (finding that a jury could conclude a defendant was acting under color of law even when he "beg[a]n the evening acting 'in the ambit of his personal pursuits'"—specifically going to a bar and drinking (quoting *Pitchell*, 13 F.3d at 548)); *Albert v. City of New York*, 17-CV-3957 (ARR), 2018 U.S. Dist. LEXIS 179576, at *17 (E.D.N.Y. Oct. 18, 2018) ("[T]he fact that a police officer may have exceeded his authority or acted in a manner that would not have been authorized by the state is not dispositive to the [color of law] analysis.").

Plaintiff has adequately stated a claim that Sergeant Kim and Officer Kim were acting under color of law; accordingly, I deny City defendants' motion to dismiss her § 1983 claims.

## II. Plaintiff Has Failed to State a Claim for Negligent Hiring, Training, or Supervision.

City defendants also urge me to dismiss plaintiff's negligent hiring, training, and supervision claims, arguing that plaintiff has not alleged sufficient facts to support these causes of action. Defs.' Mem. 6–7. To state a claim for negligent hiring, training, or supervision under New York law, "in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer

9

knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 463–64 (S.D.N.Y. 2012) (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)). An employer can be held liable under one of these theories of negligence—hiring, training, or supervision—only if the employee was acting outside of the scope of their employment when they committed the tort. *Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 263–64 (E.D.N.Y. 2014).

Though plaintiff claims that City defendants were negligent in their hiring, training, and supervision of Sergeant Kim and Officer Kim, she has not submitted any concrete factual allegation showing that they knew or should have known of Sergeant Kim's or Officer's Kim propensity for the conduct that caused her injury. Rather, the complaint contains only conclusory claims that City defendants "knew or had reason to know that [Sergeant Kim and Officer Kim were not] viable candidate[s] for employment as a police officer" and that their actions toward her were "reasonably foreseeable and totally preventable." Compl. ¶¶ 38, 46. Without more, this "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also, e.g., Cort v. Marshall's Dep't Store*, 14-CV-7385 (NGG), 2015 U.S. Dist. LEXIS 172611, at *13–14 (E.D.N.Y. Dec. 29, 2015) (dismissing negligent hiring, retention, supervision, and training claims where plaintiff alleged only that the employer "knew or should have known of its employee's propensity for the conduct that caused the injury"); *Doe v. Alsaud*, 12 F. Supp. 3d 674, 680–81 (S.D.N.Y. 2014) (dismissing negligent supervision and retention claims where complaint did not contain any specific factual allegations demonstrating employee's propensity for misconduct or employer's knowledge thereof); *Cruz v. New York*, 24 F. Supp. 3d 299, 311–12

10

(W.D.N.Y. 2014) (finding that dismissal under Rule 12(b)(6) was warranted where the plaintiff's claims of negligent hiring, training, and retention were "conclusory and unsupported by any factual allegations supporting his assertion").

As plaintiff has failed to state a claim for negligent hiring, training, or supervision, I grant City defendants' motion to dismiss those counts.[3]

### III. It Is Appropriate to Exercise Supplemental Jurisdiction over Sergeant Kim's Cross Claims against the City for Indemnification.

Finally, City defendants argue that I should dismiss Sergeant Kim's cross claim against the City for indemnification, asserting that the claim is not yet ripe. Defs.' Mem. 8–10.[4] "Claims for indemnification do not generally ripen until a judgment in the underlying action is paid." *Harris v. Rivera*, 921 F. Supp. 1058, 1062 (S.D.N.Y. 1995). However, a number of courts in this circuit "have created a broad exception to this rule," *id.*, permitting "defendants to assert indemnification cross-claims 'before they are technically ripe' in order to promote 'fairness and judicial economy,' but [deferring] consideration of the indemnification cross-claim until after a verdict as to liability has been entered," *Cucchiara v. Hollingsworth*, 15-CV-314 (KBF), 2016 U.S. Dist. LEXIS 142541, at *24–25 (S.D.N.Y. Oct. 14, 2016). *See id.* at *25 (collecting cases); *Isaacs v. City of New York*, 17-CV-3957, 17-CV-4315 (ARR), 2019 U.S. Dist. LEXIS 41044, at *20–21 (E.D.N.Y.

---

[3] Because I am granting City defendants' motion to dismiss the negligence claims under Rule 12(b)(6), I do not reach their additional argument that the claims against Commissioner Shea must fail because he was not yet Commissioner in October 2019, when the conduct underlying this case occurred. *See* Defs.' Mem. 7–8.

[4] Both parties acknowledge that it is within my discretion to maintain supplemental jurisdiction over this state law claim. *See* Defs.' Mem. 9–10; Def. Kim's Resp. 2; *see also Harris v. Rivera*, 921 F. Supp. 1058, 1062 (S.D.N.Y. 1995) ("Federal courts have exercised supplemental jurisdiction over claims for indemnification when these claims were 'tightly interwoven with federal law issues the lawsuit presents.'" (quoting *Turk v. McCarthy*, 661 F. Supp. 1526, 1536 (E.D.N.Y. 1987))).

11

Mar. 13, 2019) (explaining that "it is far more common for courts in this circuit to retain jurisdiction over a technically unripe indemnification claim in the interests of judicial economy and fairness").

In this case, I find that fairness and judicial economy weigh in favor of exercising supplemental jurisdiction over Sergeant Kim's indemnification claim, even as it is not ripe at this moment. As Sergeant Kim points out, should plaintiff prevail in her case against him, resolving his indemnification claim against the City will require a court to determine whether he was acting within the scope of employment when his alleged misconduct occurred; answering this question will necessarily involve consideration of the exact same facts and circumstances as plaintiff's underlying claim against him. *See* Def. Kim's Resp. 4. Declining to exercise jurisdiction over Sergeant Kim's claim would therefore risk creating duplicative work on the part of both the parties and the court that would ultimately hear his indemnification claim. *Cf. McLeod v. Llano*, 17-CV-6062 (ARR), 2019 U.S. Dist. LEXIS 39925, at *24–28 (E.D.N.Y. Mar. 12, 2019) (coming to the same conclusion); *Banks v. Yokemick*, 144 F. Supp. 2d 272, 285 (S.D.N.Y. 2001) (describing how declining jurisdiction over a similar indemnification claim "places an additional burden on [the parties] to expend resources in a new filing before another court whose own time and judicial resources would be spent becoming acquainted with the matter and otherwise duplicating efforts already expended here"); *Musso v. City of New York*, 05-CV-2511 (RRM), 2010 U.S. Dist. LEXIS 153622, at *10–11 (E.D.N.Y. Mar. 30, 2010) (exercising supplemental jurisdiction over an indemnification cross claim where the claim was "closely related to the events giving rise to [the] underlying action"). Thus, it is in the interest of judicial economy and fairness that one court decide both plaintiff's claims and Sergeant Kim's related cross claims.

I am unconvinced by City defendants' arguments urging me to decline to exercise

jurisdiction. Though City defendants recognize that I may exercise jurisdiction, they urge me not to because "[d]oing so 'would inequitably force the City to remain involved in [the litigation] through verdict even though its interest arises only if [Sergeant Kim] is found liable to the plaintiff.'" Defs.' Mem. 9 (quoting *Cucchiara*, 2016 U.S. Dist. LEXIS 142541, at *26). But because Sergeant Kim's cross claim, if it ripens at all, will not do so until judgment, there is "no reason to adjudicate the indemnification issue[] prior to any liability determination." *Hanson v. New York City*, 15-CV-1447 (MKB), 2018 U.S. Dist. LEXIS 51581, at *72 (E.D.N.Y. Mar. 27, 2018); *see also Isaacs*, 2019 U.S. Dist. LEXIS 41044, at *21–22 ("Until a final determination on [cross-claimant's] liability has been made, the indemnification claim exists only as a placeholder; the City cannot be forced to actively litigate the claim unless and until a judgment is rendered against [cross-claimant]."). The City will therefore become involved in the case only "if and when it has to make an indemnification decision, and its involvement will be the same regardless of the venue where [Sergeant Kim] can then challenge its decision." *McLeod*, 2019 U.S. Dist. LEXIS 39925, at *27. Accordingly, I see no inequity in keeping the City as a party in this action and retain supplemental jurisdiction over Sergeant Kim's indemnification claim.

### IV. Plaintiff's Request to File Her Proposed First Amended Complaint Is Granted in Part and Denied in Part.

In her response to City defendants' motion to dismiss, plaintiff argues, "To the extent the Court perceives any deficiency [in her original complaint], leave to amend should be granted under the liberal policy of Rule 15(a)." Plain.'s Mem. 16. At my request, plaintiff filed a proposed First Amended Complaint, *see* Am. Compl., ECF No. 44, which asserts some of her § 1983 claims with greater specificity, *see id.* ¶¶ 30–32, 38–39. Of note here, the First Amended Complaint contains no additional allegations regarding her negligence claims against City defendants. *Compare* Compl. ¶¶ 37–46 *with* Am. Compl. ¶¶ 41–50.

It is within the discretion of a district court whether to grant a plaintiff leave to amend. *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009). Under Rule 15 of the Federal Rules of Civil Procedure, a "court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "However, a request to replead should be denied in the event that amendment would be futile." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012). More specifically, "[l]eave to amend may be denied as futile if proposed amended complaint would not withstand a FRCP 12(b)(6) motion to dismiss for failure to state a claim." *Lubavitch of Old Westbury v. Inc. Vill. of Old Westbury*, 08-CV-5081 (DRH), 2021 U.S. Dist. LEXIS 188915, at *57 (E.D.N.Y. Sept. 30, 2021).

Strictly speaking, granting plaintiff leave to amend her complaint in the way she has proposed would not be futile. Like the original complaint on which this order is based, plaintiff's proposed First Amended Complaint sufficiently states claims for violations of § 1983. *See supra* Discussion I. The amended complaint simply adds additional information and further specificity to the § 1983 claims as pleaded in the original complaint. Though this additional information is not necessary to survive a motion to dismiss, its incorporation would not be futile. Should she so choose, plaintiff may amend her complaint to include the language she proposes adding to the claims asserting violations of § 1983.

The First Amended Complaint does not, however, cure the deficiencies in plaintiff's negligent hiring, training, and supervision claims. Indeed, as discussed above, plaintiff has not changed her articulation of these claims at all, nor has she provided any additional factual allegations to support her assertions. Thus, the negligence claims in plaintiff's proposed amended complaint also would not survive a motion to dismiss, and it would be futile for plaintiff to bring them. I deny plaintiff leave to amend her complaint to reassert the negligence claims she has

brought against City defendants: if plaintiff elects to replace her original complaint, the amended complaint should not include the claims for negligent hiring, training, and supervision.

## CONCLUSION

In summary, City defendants' motion to dismiss is granted in part and denied in part. I dismiss plaintiff's negligent hiring, supervision, and training claims, but I decline to dismiss her § 1983 claims. I will also retain jurisdiction over Sergeant Kim's cross claim for indemnification against the City. Plaintiff's request to file an amended complaint is denied in part and granted in part: though plaintiff may revise her § 1983 claims in the way she has proposed, she may not reassert her negligence claims, as doing so would be futile.

SO ORDERED.

                                                                                                                                      /s/
                                                                                                                                 Allyne R. Ross
                                                                                                                                 United States District Judge

Dated:        October 21, 2021
               Brooklyn, New York